STEPHEN W. ISLER vs. ISAAC BROWN *et al.*

1. The wrongful refusal of a Court to permit a judgment creditor to have exe-cution of his judgment, does not operate (upon the abolition of such court, pending an appeal from such refusal) to impair any lien acquired theretofore, or which might have been acquired thereafter, but for such refusal, under the maxim *actus legis nemini facet injuriam.*

2. Hence, where, after judgment obtained in 1861, and executions regularly kept up thereon, a motion was made by a judgment creditor in 1866, in one of the late county courts for execution upon his judgment, which was wrong-fully refused, and pending an appeal therefrom, such Court was abolished, it was, *Held* that one who purchased from the judgment debtor pending such appeal, took the legal estate, but subject to such lien as would have been ac-quired, had execution issued.

3. In such a case, if the judgment creditor had not a complete lien upon the estate of his debtor he had at least an *inchoate* lien, with a right to perfect it by issuing an execution; his proceeding to cause execution to be issued, con-stituted a *lis pendens,* of which every one is held to have had notice, and a par-ty purchasing from the judgment-debtor, pending the proceedings, is consid-ered as dealing with him under exactly the same conditions, and subject to the same liens, as if the county court had not refused an execution, and the same had been regularly issued.

4. The creditor so delayed must be placed in *statu quo,* and as a corrolary, any such purchaser is effected with notice by a presumption *juris et de jure.*

5. The above stated rule it founded on the maxim *pendante lite nihil innovetur,* and is sustained by considerations of public policy.

STEPHEN W. ISLER *v.* ISAAC BROWN.

6. The doctrine of *lis pendens,* elucidated and applied to this case per RODMAN, Judge.

The cases of *Aycock* v. *Harrison,* 63 N C. 145. *Lee* v. *Gause,* 4 Ired. 9, *Isler* v. *Foy,* and *Isler* v. *Harrissn,* at this term. *Yarborough* v. *State Bank,* 2 Dev. 23,. and *Callowoy* v. *Hamby,* 65 N. C., 631, cited and approved.

Action to recover possession of certain tracts of land descri- bed in the pleadings, tried before Clarke, Judge, at Jones Su- perior Court, Fall Term 1871, upon the following case argreed :

At August Term 1861, of Wayne County Court, Aycock to the use of Isler recovered two judgments against F. B. Harri- son and defendant, Cox, amounting to about $7,400, and costs. Executions were issued regularly from Term to Term, to the county of Jones. until the 4th day of March, 1864, when an *alias* issued to Wake county, returnable to November Term 1864. From November Term 1864, to November Term 1865, an execution issued to the county of Jones, which was followed by other executions to Jones county until the 13th day of April, 1866, when an *alias* issued from November Term 1865, to May Term 1866, of Wayne County Court, which execution was levied upon the lands of F. B. Harrison. An *alias ven. ex.* with *fi fa* clause issued from May Term to August Term of Wayne County Court. Returned "No sale on account of Stay Law."

At August Term of Wayne County Court plaintiff made a motion for an *alias ven. ex.,* which was refused. Plaintiff ap- pealed to the Superior Court and thence to the Supreme Court. Supreme Court decided, at January Term 1869, that plaintiff was entitled to his motion.

The judgment, the record of the various executions and *ven. ex's,* the levy, &c., were regularly docketed in Jones county,. 30th day of November 1868.

An *alias ven, ex.* with *fi fa* clause issued, but no sale of the land in suit took place.

Subsequently, from Spring Term of Jones Superior Court,.

A. D., 1869, an *alias ven· ex.* with *fi fa* clause issued, returnable to Fall Term 1869.

On the 6th day of September, 1869, the land in suit was sold as the property of defendant Cox, by the sheriff, after the tract of land of the defendant, Harrison, was sold, but admitted to be the same land. The plaintiff became purchaser and took the sheriff's deed on the 6th day of September, 1869.

Defendants claimed under a deed made by Wm. A. Cox, Feb. 25th 1867, to Isaac Brown, one made Dr. Wright, W. S. C. to Brown.

His Honor being of opinion with the defendant rendered judgment accordingly and the plaintiff appealed.

*Green* for the plaintiff.
*Manly & Haughton* for the defendant.

RODMAN, J. Section 403 of C. C. P. says that existing judgments not dormant may be entered on the execution dockets of the Superior Courts, and that the subsequent proceedings shall be as prescribed, for actions hereafter commenced as far as compatible with the previous proceedings, "and no lein acquired before the ratification aforesaid (of C. C. P. Aug., 1868) shall be lost by any change of process occasioned by this &ct."

So that if the creditor under whose execution the plaintiff purchased, had a lien when he docketed his judgment in Jones county, which was in November 1868, that lien was preserved.

It is needless to inquire whether the creditor acquired a lien prior to 1864, and whether that lien was lost by his omisssion to issue his execution to Jones county from Spring Term, 1864, or not ; for executions were regularly issued to that county from November Term, 1864, and from each subsequent term down to August Term, 1866, when the creditor moved the County Court of Wayne for an alias execution, which the Court refused. He then applied to the Superior

Court for a *procedendo*, which was refused by the Judge, and he then appealed to this Court. 63 N. C. 145.

This Court said he was entitled to his execution from the County Court of Wayne, and to his writ of *procedendo* from the Superior Court, but as both those Courts had in the meanwhile been abolished, it was impossible for us to give that remedy then.

It admits of no dispute, that if the creditor had kept up an an uninterrupted chain of executions down to the sale, they would have related back at least to November, 1864, and the purchaser would have the title which Cox had at that time, and would thus defeat the deed made to Brown in February, 1867.

The question then is, did the interruption in the chain of executions, caused by the wrongful act of the County Court of Wayne, have the effect of destroying the creditor's lien. We think it did not on the maxim, *actus legis nemini facit injuriam*

The act of the law means of course the act of a Court. The case of *Pulteney* v. *Warren*, 6 Vesey 73, is a strong authority. The plaintiff had brought ejectment against Dr. Warren, and his action was delayed for several years, first by an order of the Court of King's Bench, and then by an injunction, which was finally dissolved, and the plaintiff obtained judgment in his ejectment. A few days afterwards Dr. Warren died, whereby on the ground that a personal action dies with the person, the plaintiff was supposed unable to recover *mesne* profits. The bill was brought against the executor of Dr. Warren to recover these *mesne* profits. Lord Eldon said, "I agree, it is impossible to consider the mere circumstance of his (Dr. Warren's) death, as that species of accident against which this Court would relieve. It is admitted this case is new in its kind. It is contended however that this demand on the general principle can be supported by analogy to other cases.

I feel very strongly that this claim is founded on natural and

moral justice, and if it could be sustained from the general principle, the Court would be very strongly inclined to support it; but if it is to be determined on the general principle it must be decisively put upon that ground and not upon an analogy that will not hold."

He then considers the various analogies which had been suggested, and concludes that none of them hold, and puts the decision on the general principle which he thus states, "The case was also put of a creditor prevented from obtaining judment by the act of this Court, and the question whether he ought to be considered a judgment creditor. I will not say what the answer might be to a case put so generally. A Court of law always taks care that a creditor so prevented shall be put in the same situation as if he had his judgment, and no such application had been made," &c., and continues, "the equity as to all of them (Dr. Warren and the other tenants) arises from their joint act, operating to prevent the plaintiff from having that redress at law, which in all probability he would have had, if this Court not interfered, and which in all moral justice he ought to have had," and he decreed an account of the mesne profits.

It is on the same principle that Courts of Equity allow an obligee to recover interest beyond the penalty of the bond, when the obligor by protracted litigation has made the penalty insufficient. (2 Story, Eq. Jur. S. 1316), and give a creditor relief, notwithstanding the statute of limitations is a bar at law, when a suit at law has been delayed by the litigation of the debtor. Id. S. 1521, and when a party dies after verdict and before judgment, and the judgment has been delayed by the inaction of the Court, the Court will give judgment nunc pro tunc. Freeman v. Tranch, 12 C. B., (74 E. C. L. R. 409.) Lea v. Gause, 4 Ire., 9.

But it may be said that however conclusively this case establishes the plaintiff's equity against Cox, who was the defendant in the execution, it does not extend a similar equity

against Brown, who was an innocent purchaser and had no part in producing the interruption which was injurious to the plaintiff. In the first place, it will be remarked that there was no need to set up this equity against Cox, as the plaintiff had a full legal right against him by virtue of his purchase at execution sale. But that legal right, being of the nature of a personal estoppel, would not bind Brown, *Isler* v. *Foy and Harrison, at this term.* As a foundation for an equity against Brown, it was necessary to show an equity against Cox, and it remains to be seen whether there is any principle in the law by which this equity can be extended so as to include Brown.

We think that the doctrine that a *lis pendens* is constructive notice, has this effect, (*Story,* 1 *Eq. Jur. S.* 405), thus expresses the doctrine. "It is upon similar grounds that every man is presumed to be attentive to what passes in the Courts of justice of the State or sovereignty where he resides. And therefore a purchase made of property actually in litigation, *pendente lite,* for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice, and he will be accordingly bound by the judgment or decree in the suit."

But it is said by the learned counsel for the defendant, that there was no *lis pendens* about the property in dispute in the present action, and he refers us to the case of *Worsley* v. *Earl, of Scarboro,* 3 *Atk.* 392, where the Chancellor says, "if money be secured upon an estate and there is a question depending in this Court upon the right of or about that money, but no question relating to the estate upon which it is secured, but is wholly collateral matter, a purchaser of the estate pending that suit, would not be affected with notice by such implication as the law creates by the pending of a suit." The law is undisputed; its application to this case however is not admitted; certainly the land now in suit was not in litigation in the case concerning the refusal of execution. The right to have execution against the defendants in that action, (of whom the

36

present defendant Cox was one,) was the property in litigation there ; and although in some sense of the word, a right to have execution, may not be property, yet as used by Judge Story in the passage quoted, such a right is property. It comes within the reason of the rule.

In the present case if the execution creditor had not a complete lien upon the estate of the debtor, he had at least an inchoate lien with a right to go on and perfect it by re-issuing execution, which the county court refused to allow him to do, and from which refusal he appealed.

It is too well settled to be a question, that a *fi fa* is a lien upon the land of the debtor in the county to which it issues, from its *teste*, and this lien will be continued by the issuing of an *alias*, and *pluries*, &c., so that they will bind the land by relation to the original *teste*, as against any sale made by the debtor. *Yarborough* v. *State Bank*, 2 Dev. 23.

But for the refusal of the county court it must be presumed that the execution creditor would have duly continued to issue his execution (a ven. ex. with a *fi fa* clause) until he could procure satisfaction, or was stopped by a return of *nulla bona*. Therein the refusal of the county court was injurious ; it prevented him from keeping up his lien. Had his executions continued to issue duly all persons dealing with the debtor for his land would have been held to have notice of them, and would have bought subject to them. Therefore it is, that to prevent injury to the plaintiff in the execution from the act of the court, and to put him in exactly the condition he would have been in but for that act, the courts are obliged to hold that all persons had notice of the *lis pendens* respecting his right to have execution, and that they dealt with the debtor for his land, under exactly the same conditions, and subject to the same liens, that they would have done if the Court had not refused execution, and the same had regularly issued. The party delayed by the act of the Court must be put *in statu*

*quo.* Whoever bought the defendants land during that litigation, bought with notice of it, and subject to its result.

It has been said by several writers, that this rule will sometimes work a hardship; and it has been urged that in this case it will do so. The rule however, is founded on the maxim, *Pendente lite nihil innovetur,*" and is sustained by considerations of public policy. "*Privatum incommodum publico bono pensatur.*"

Under a system by which law and equity were administered by different courts, the remedy of the plaintiff in this case would probably have been by a bill to hold the defendant Brown a trustee for the plaintiff, and to require a conveyance from him. As the courts of this State now administer both jurisdictions without any distinction of form, the plaintiff would have been entitled to that judgment if he had asked for it. *Calloway* v. *Hamby,* 65 N. C 631. As he asks for nothing but the possession, he can have judgment for that only.

There is error in the judgment below, which is reversed, and there will be a *venire de novo.*

PER CURIAM.                    Judgment reversed.